UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**EDWARD LEE KAUFMAN** and **PAMELA SUE KAUFMAN**,

Debtors.

Case No. **08-60501-13**

## *MEMORANDUM of DECISION*

At Butte in said District this 21st day of August, 2008.

In this Chapter 13 bankruptcy, after due notice, a hearing was held July 24, 2008, in Billings on confirmation of Debtors' Chapter 13 Plan dated May 14, 2008. The Chapter 13 Trustee, Robert G. Drummond of Great Falls, Montana, appeared at the hearing in opposition to confirmation of Debtors' Chapter 13 Plan, while Debtors' attorney of record, Craig D. Martinson of Billings, Montana, appeared in support of confirmation of Debtors' Chapter 13 Plan. Debtor Pamela Sue Kaufman ("Pamela") and Zene Johnson of The Realty Place testified in support of confirmation. Debtors' Exhibits A and B were admitted into evidence without objection. This Memorandum of Decision sets forth the Court's findings of fact and conclusions of law.

BACKGROUND

The facts in this case are straight forward and not in dispute. Debtors filed their Chapter 13 bankruptcy petition on April 30, 2008. At that time, Debtors owned no real property, but on Schedule B, Debtors listed personal assets with a total value of $88,922.58. Pursuant to Schedule D, Debtors owe $41,840.59 to secured creditors, of which $6,386.31 is listed as unsecured. Debtors also owe priority tax claims of $7,013.73 and pursuant to Schedule F,

1

Debtors have $212,534.50 of unsecured debt.  On Schedule I, Debtors list their gross monthly income as $8,340.36, and after subtracting payroll taxes, insurance, 403B and parking, Debtors disclose that their net monthly income is $5,897.97.  After adding other income of $864.77, Debtors' combined average monthly income is $6,762.74.  Debtors estimate their total monthly expenses on Schedule J at $6,615.42, which amount includes monthly rent of $2,000.00, utilities of $615.00, $100.00 for home maintenance on their rental, $850.00 for food, $275.00 for clothing, $200.00 for recreation, $100.00 for miscellaneous expenses and $171.00 for payment of a student loan.  Debtors have three children ages 14, 16 and 20.

     In addition to filing Schedules and a Statement of Financial Affairs, Debtors also filed Form 22C.  At Part III, "Application of § 1325(b)(3) for Determining Disposable Income," Debtors calculate that their current monthly income is $9,198.41 and further disclose at Line 21 of their Form 22C that their annualized current monthly income of $110,380.92 exceeds the applicable median family income for a family of five in the amount $69,201.00 as determined at www.usdoj.gov/ust.  In calculating their disposable income, Debtors entered an adjustment on Line 26 of Form 22C.  Line 26 allows debtors to make an adjustment to the local standards for housing and utilities. The Debtors' adjustment on Line 26 is $1,100.00 for "REQUIRED HOUSE LEASE PAYMENT IN EXCESS OF IRS STANDARDS."  Including the $1,100.00 housing and utilities adjustment, Debtors have $8,961.61 in total deductions on Form 22C, leaving Debtors with disposable income on Line 59 in the amount of $236.80 per month (Debtors' current monthly income of $9,198.41 less their deductions from income of $8,961.61).

     Debtors' Chapter 13 Plan dated May 14, 2008, provides for monthly plan payments of $860.00 over a period of 60 months.  The Trustee objected to confirmation of the Debtors'

Chapter 13 Plan on June 13, 2008, arguing that Debtors' adjustment of $1,100.00 on line 26 of Form 22C did not constitute a "special circumstance" and alleged that the expenditure was not reasonable. The Trustee also objected to Debtors' proposed plan on the basis of the Debtors' separate payment to a student loan creditor. The Trustee filed a Supplemental Objection to Confirmation of Debtors' plan on June 17, 2008, arguing that Debtors' proposed plan did not provide for Americas Servicing Company's secured claim in any fashion and further argued that Debtors were inappropriately attempting to litigate the amount CitiFinancial's secured claim.

In response to the Trustee's Supplemental Objection to Confirmation, the Debtors filed on July 22, 2008, objections to Claim Number 13 of Americas Servicing Company and Claim Number 1 of CitiFinancial. A hearing on Debtors' Objections to Proofs of Claim Numbers 1 and 13 was held August 21, 2008, where Debtors' Objections were sustained. Debtors also filed a Motion for Valuation of Security on July 29, 2008, seeking to set the amount of CitiFinancial's allowed secured claim at $7,625.00. The Court entered an Order on August 12, 2008, fixing the amount of CitiFinancial's allowed secured claim at $7,625.00, with the remainder of CitiFinancial's claim allowed as an unsecured nonpriority claim.

Also, at the confirmation hearing held July 24, 2008, Pamela testified that Debtors had stopped making a direct payment on their student loan. In view of the objections to the claims and the Debtors' testimony regarding their student loan, the remaining issue at this time regarding confirmation of Debtors' Chapter 13 Plan is the allowance of the $1,100.00 adjustment to Debtors' housing and utilities expense on Line 26 of Form 22C.

Pamela testified that the Debtors had previously owned a home located at 1325 Kootenai, Billings, Montana. Debtors' home was approximately 4,000 square feet and Debtors' monthly

mortgage payments on the 1325 Kootenai home were in excess of $2,000.00. Debtors, however, fell behind with their mortgage payments during the summer of 2006 and Debtors eventually lost their home in February 2007 when it was sold at a foreclosure sale. Exhibit B, the Notice of Trustee's Sale of Real Property, confirms that Debtors' home was subject to a trustee's sale on February 28, 2007. Pamela testified that following the February 28, 2007, foreclosure sale, Debtors' entered into a rental agreement with Deborah Ross to rent property located at 431 Constitution in Billings, which was not far from Debtors' 1325 Kootenai home. Pamela testified that the proximity of the rental to Debtors' previous home at 1325 Kootenai allowed Debtors' children to attend their same schools.

Debtors also introduced into evidence Exhibit A, a 30-Day Notice to Quit and Terminate the Rental Agreement, dated April 8, 2008, giving Debtors 30 days to vacate the rental home at 431 Constitution. Debtors' monthly rental expense for the home at 431 Constitution was $1,100.00. Pamela testified that Debtors were surprised when they received the termination notice from Deborah Ross because Debtors intended to reside in the 431 Constitution home for an extended period of time beyond April 8, 2008. However, Debtors now believe, in hindsight, that the home at 431 Constitution was too small because one of Debtors' children had to live in the downstairs family room and Debtors had to keep some of their belongings in a storage unit.

During the 30-day period that commenced on April 8, 2008, Debtors searched the Internet and contacted a realtor and were successful in finding a new rental home located at 1675 Picadore Place in Billings. It appears from the testimony that Debtors found the 1675 Picadore Place home, and intended to rent said premises, sometime prior to April 29, 2008, when Debtors signed their bankruptcy schedules. However, according to Pamela, Debtors did not enter into

their lease agreement for the home at 1675 Picadore Place and did not move into the home until sometime in May of 2008.

The home at 1675 Picadore Place is approximately 2,000 square feet and has four bedrooms, three baths and a three-car garage. Debtors are able to keep their cat and dog at the home, and Debtors children are still able to attend their same schools. Pamela also testified that Debtors can fit all their belongings in the new rental home and thus, no longer need their storage unit. Under the terms of the current lease, Debtors' monthly rent is $2,000.00. Pamela testified that Debtors' paramount concern is that the children remain in their same schools, particularly after Debtors lost their home. Debtors did not offer their current lease agreement into evidence. Zene Johnson testified that the Billings rental market is "tight" and that finding homes that accept pets is particularly difficult. Zene Johnson also testified that Debtors' current monthly rental payment of $2,000.00 is a fair price for the home at 1675 Picadore Place.

## APPLICABLE LAW

The Trustee's one remaining objection to confirmation of Debtors' Chapter 13 Plan is that Debtors are failing to commit 100% of their disposable income to fund their Chapter 13 Plan as required by 11 U.S.C. § 1325(b) because Debtors' excess rent deduction of $1,100.00 is not a special circumstance that should be allowed as a housing and utility adjustment. It is well-established law in this Circuit that for a bankruptcy court to confirm a plan, "each of the requirements of section 1325 *must be present* and the debtor has the burden of proving that each element has been met." *Barnes v. Barnes (In re Barnes)*, 32 F.3d 405, 407 (9th Cir. 1994); *Andrews v. Loheit (In re Andrews)*, 49 F.3d 1404, 1408 (9th Cir. 1995); *Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443-44 (9th Cir.1986) (citing *In re Elkind*, 11

5

B.R. 473, 476 (Bankr.D.Colo.1981)) (emphasis added).  *See also Ho. v. Dowell (In re Ho)*, 274 B.R. 867, 883 (9th Cir. BAP 2002) (under § 1325(a)(3), the debtor has the burden of proving good faith).

As this Court has discussed in prior cases, the disposable income test of § 1325(b) underwent substantial revision in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. 109-8) ("BAPCPA").  *In re Stubbs*, 2007 WL 4287579 (Bankr. D.Mont. 2007); *In re Crabtree*, 2007 WL 3024030 (Bankr. D.Mont. 2007); *In re Chavez*, 2007 WL 3023145 (Bankr. D.Mont. 2007).  BAPCPA was signed into law on April 20, 2005, and with certain exceptions, is applicable to cases commenced after October 16, 2005.  The instant bankruptcy case, which was commenced on April 30, 2008, is clearly governed by the Bankruptcy Code as amended by BAPCPA.

BAPCPA substantially modified the disposable income test of § 1325(b) in the following manner: (1) disposable income [current monthly income] is determined by the debtor's average monthly income received within the six-month period ending on the last day of the calendar month immediately preceding the date of the commencement of bankruptcy petition (*see* §§ 1325(b)(2) and 101(10A)); (2) for debtors with income above the applicable state's median income, amounts reasonably necessary to be expended are determined as the debtor's applicable monthly expense amounts specified under the IRS National and Local Standards and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses for the area in which the debtor resides on the date of filing (§§ 1325(b)(3) and 707(b)(2)(A) and (B)); and (3) projected disposable income, multiplied by the applicable commitment period is the amount to be paid to unsecured creditors, §§ 1325(b)(1)(B) and 1325(b)(4)(B).

Congress defined the term "current monthly income" ("CMI"), as set forth in § 1325(b)(2), at § 101(10A) as the average monthly income from all sources, with some exceptions, that the debtor receives during the 6-month period ending on the last day of the calendar month immediately preceding the date of the commencement of debtor's bankruptcy case.[1] CMI is calculated by having all debtors complete lines 1-23 of Form 22C, with the result being listed on line 21 as the debtor's "[a]nnualized current monthly income for § 1325(b)(3)." The term "disposable income" is defined at § 1325(b)(2) and is determined differently depending on whether the debtor's income is above or below the applicable median family income as determined by the debtor's place of residence and household size. If a debtor's annualized current monthly income, as set forth on Line 21 of Form 22C, is greater than the applicable state's median income for a household of the same size, reasonably necessary expenses are calculated using the "Means Test" of § 707(b)(2)(A) and (B). *Maney v. Kagenveama (In re Kagenveama)*, ___ F.3d ___, 2008 WL 2485570 (9th Cir. 2008).

The following language of § 1325(b)(2) plainly states its intent: "For purposes of this subsection, 'disposable income' means . . . ." To understand the scope of the words "this subsection" at the beginning of § 1325(b)(2), reference is simply made to § 1325(a) which begins "Except as provided in *subsection (b)*." (Italics added). In order to give effect to all the pertinent statutory language, this Court reads "this subsection" in § 1325(b)(2) to mean all of subsection 1325(b), both § 1325(b)(1)(B) and § 1325(b)(2), and thus "disposable income" is defined at § 1325(b)(2) for purposes of determining "projected disposable income" under § 1325(b)(1)(B) to

---

[1] CMI excludes Social Security benefits or payments to victims of war crimes, of crimes against humanity or terrorism, and in the context of a chapter 13 bankruptcy (*see* § 101(10A)(B)), also excludes alimony, child support, foster care, and child disability payments (§ 1325(b)(2)).

7

decide the disposable income test. *See, e.g., Kagenveama,* 2008 WL 2485570; *In re Alexander*, 344 B.R. 742, 749 (Bankr. E.D. N.C. 2006) ("If 'disposable income' is not linked to 'projected disposable income' then it is just a floating definition with no apparent purpose."). This Court's prior ruling in *In re Tranmer*, 355 B.R. 234 (Bankr. D. Mont. 2006), that expenses of above-median debtors' must be determined in accordance with the mechanical "means test" set forth in § 707(b), gives effect to "disposable income" in both §1325(b)(1)(B) and § 1325(b)(2) in the manner which avoids rendering one superfluous and is consistent with the now settled law of the Ninth Circuit. *Connecticut National Bank v. Germain*, 503 U.S. at 252-54, 112 S.Ct. at 1149; *Rake v. Wade,* 508 U.S. at 471-72, 113 S.Ct. at 2192.

As previously mentioned, the Trustee and Debtors agree that Debtors' income is above Montana's median income for a family of five. Thus, Debtors' disposable income is, by statute, determined by Form 22C and not Debtors' Schedules I and J. *Kagenveama,* 2008 WL 2485570, pp. 6368-75. Additionally, Debtors do not dispute this Court's application of the mechanical test, but instead argue that the overall cost of living in Yellowstone County and in particular, Billings, coupled with Debtors' desire to keep their children in their same schools, is a special circumstance that warrants consideration of additional expenses under § 707(b)(2)(B), which reads:

> (B)(I) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.
>
> (ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide--
>
>> (I) documentation for such expense or adjustment to income; and

8

>> (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.
>
> (iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

The above-quoted subsection allows debtors to rebut the presumption of abuse "by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative," § 707(b)(2)(B)(I), provided the presumption of abuse is rebutted if the additional expenses cause the product of the debtor's current monthly income when multiplied by 60 to be less than the distinct trigger points of § 707(b)(2)(B)(iv). This subsection is applicable in determining amounts reasonably necessary to be expended by the plain language of § 1325(b)(3), and so the Court will apply that test to Debtors' $1,100.00 adjustment for housing.

In *In re Tuss*, 360 B.R. 684 (Bankr. D.Mont. 2007), this Court declined to adopt the separate and parallel analysis described in *In re Jass*, 340 B.R. 411, 418 (Bankr. D. Utah 2006), where the court presumed the number from Form B22C is the debtor's "'projected disposable income' unless the debtor can show that a substantial change in circumstances has occurred such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future." The court in *Jass* acknowledged that § 707(b)(2)(B) allows a debtor to rebut the presumption of abuse where the debtor can demonstrate special circumstances, which the court described as "similar to the Court's inquiry into whether a substantial change in circumstances exists." *Jass*, 340 B.R. at 418. The court also stated that it would look to the analysis required by § 707(b)(2)(B) for guidance whether a debtor has met his or her burden to show a substantial change in circumstances, and that a debtor attempting to meet

9

that burden should present documentation similar to that required by § 707(b)(2)(B). As noted in *Tuss*, the Court found no statutory authorization for the *Jass* court's "substantial change in circumstances" exception to the means test, and declined to adopt that separate test.

In considering special circumstances, this Court looks directly to § 707(b)(2)(B), as specifically authorized by § 1325(b)(3), requiring itemized documentation of expenses and a detailed explanation of the "special circumstances" that justify the additional expenses for which no reasonable alternative exists. *In re Demonica*, 345 B.R. 895, 903 (Bankr. E.D. Ill 2006). After much consideration, the Court concludes that Debtors' evidence of special circumstances does not satisfy § 707(b)(2)(B).

In reaching its decision, the Court first disputes Debtors' mathematical calculation of their excess rent. Debtors maintain that their rental payment of $2,000 per month exceeds the mortgage/rent expense allowance under the Internal Revenue Service Housing and Utilities Standards by $1,100.00. The Internal Revenue Service Housing and Utilities Standards for mortgage and rent expense is $989.00, which amount is $1,011.00 less than Debtors' monthly rent payment of $2,000.

In addition, § 707(b)(2)(B) specifically requires that debtors provide documentation of their expense or adjustment. Debtors' attorney asserts in Debtors' post-hearing brief that Debtors' lease commenced on May 1, 2008, and Pamela testified that Debtors' monthly rent under their new lease agreement is $2,000.00. Debtors could have easily established the aforementioned fact by introducing their lease agreement into evidence, which Debtors elected not to do. The Court, therefore, concludes that Debtors, by not introducing their lease agreement into evidence, failed to provide appropriate "documentation" of their monthly rental expense,

which supposedly increased $900.00 post-petition. *See e.g., Crabtree*, 2007 WL 3024030 (specifically noting that the debtors properly documented their housing adjustment by introducing the lease agreement into evidence).

Finally, in support of their claimed housing adjustment, Debtors rely on the case of *In re Sullivan*, 370 B.R. 314 (Bankr. D.Mont. 2007), wherein this Court found special circumstances that warranted allowing the debtors' an additional expense. *Sullivan*, however, is distinguishable from the instant case because in *Sullivan*, the Court allowed the debtors a monthly adjustment to replace a furnace and to repair a severely rotted deck on the basis that said repairs were fundamental to the debtors' safety and the safety of debtors' family. *Id.* at 322. However, in *Sullivan,* the Court also denied the debtors' claimed expenses for finishing a downstairs bathroom, bringing the debtors' laundry room up to code, adding a wall to the master bedroom, repairing a fence, resurfacing the debtors' driveway, replacing broken cabinets and installing a larger water reservoir, concluding that such expenses would be nice if the debtors could afford them. *Id*. The same holds true for the Debtors' claim of excess rent in this case.

This Court does not take lightly the IRS National and Local Standards for housing, which are adjusted on not only a state by state basis, but also on an individual county basis. The Debtors in this case are claiming that their housing expense is over double the expense allowed by the IRS. Such housing expense greatly exceeds the applicable monthly housing expense allowed families living in Yellowstone County absent special circumstances that were not proven is this case.

Debtors seek to strengthen their argument in support of their housing adjustment by arguing that they want to keep their children in their same schools. While such a desire is

11

admirable, Debtors offered no extenuating circumstance that would justify doubling the IRS housing standard. For instance, Debtors do not allege that one of their children has special needs that are being met in a particular school. The skeletal evidence regarding the children's schools, together with the record, leads this Court to conclude that Debtors' children are attending public schools and that the children will receive substantially the same education no matter where Debtors live in Billings. The Court concludes that Debtors have not demonstrated that they are entitled to a housing adjustment on line 26 of Form 22C.

For the reasons discussed herein and in accordance with this Memorandum of Decision,

IT IS ORDERED that the Trustee's objection to confirmation of Debtors' Chapter 13 Plan dated May 14, 2008, is SUSTAINED; confirmation of Debtors' Chapter 13 Plan dated May 14, 2008, is DENIED; Debtors shall have 10 days from the date of this Memorandum of Decision to file an amended Chapter 13 plan and an amended Form 22C that are consistent with the Court's ruling herein; and a hearing on confirmation of Debtors' amended Chapter 13 Plan shall be held **Tuesday, September 16, 2008, at 09:00 a.m.**, or as soon thereafter as the parties can be heard, in the 5TH FLOOR COURTROOM, FEDERAL BUILDING, 316 NORTH 26TH, BILLINGS, MONTANA.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana